IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LYDON McCANN-McCALPINE,  *

  Plaintiff,  *

v.     *    Civil Action No. GLR-24-1990

PRIMECARE MEDICAL, INC., et al., *

  Defendants.  *

     ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant PrimeCare Medical Inc.'s ("PrimeCare") Motion to Dismiss (ECF No. 20). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant PrimeCare's Motion to Dismiss.

## I. BACKGROUND[1]

Self-represented Plaintiff Lydon McCann-McCalpine alleges that while he was confined at the Baltimore County Detention Center ("BCDC"), he put in sick calls to PrimeCare's mental health department from August 2022 through December 2022 regarding his mental health issues. (Id. ¶ 11). He explains that unnamed individuals harassed him during his pre-trial incarceration, causing him to develop anxiety, PTSD, depression, and a sleep disorder. (Id. ¶ 12).

---

[1] Unless otherwise noted, the Court takes the following facts from McCann-McCalpine's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

McCann-McCalpine claims that on the afternoon of October 13, 2022, a "Med-Technician" or nurse gave him medication and that it was the only time he received medication in the afternoon. (Id. ¶ 13). He alleges, however, that the nurse told him that he received afternoon medication every day according to his medical chart and that his psychiatrist had prescribed it that way. (Id. ¶ 14).

When McCann-McCalpine received his evening medication over the next few nights, he asked the nurse to tell him if he had received his afternoon medication, and she confirmed that he had received them by looking at his chart. (Id.). McCann-McCalpine deduces from this interaction that PrimeCare medical staff Jane Does 1–5 were entering false information in the system to make it look like he was receiving psychiatric medication or that he was refusing to take it. (Id. ¶ 15). He claims that PrimeCare staff who oversaw the administering of medication "deliberately [chose] to not bring [him his] medication needed to deal with [his] serious medical needs." (Id.). As a result of the deliberate denial of his medication, McCann-McCalpine claims he suffered from thoughts of suicide, hypertension caused by anxiety, insomnia, paranoia, PTSD, and unbearable depression. (Id. ¶ 16).

McCann-McCalpine states that he was supposed to receive medication three times per day and that PrimeCare staff was supposed to come to the housing tier three times per day to administer mental health medication but only came twice per day. (Id. ¶¶ 21–22). He claims that he kept track of over forty days on which PrimeCare Nurse Jane Does 1–5 did not bring his mental health medication three times a day as ordered by the doctor. (Id.

¶ 24). In McCann-McCalpine's view, this means that PrimeCare has "built a custom policy where they only bring [his medication] two times a day." (Id.).

According to McCann-McCalpine, he submitted 200 forms regarding his medication but never received a response or a resolution. (Id. ¶ 25). He claims that footage from the camera in the housing tier will confirm that PrimeCare staff came to the tier only twice a day for medication distribution. (Id.). McCann-McCalpine states that he had to "refuse locking in [his] cell at times to get Correctional officers to tell the medical [staff] to bring [his] medication." (Id. ¶ 26).

McCann-McCalpine recalls having high blood pressure on the morning of October 21, 2022, and alleges that his untreated mental health conditions caused his hypertension. (Id. ¶ 27). He states that he injured his hands when he got frustrated and hit the cell door for help, suffered emotional distress, and caused his loved ones emotional distress when dealing with his mental health issues. (Id.). As a result of all the conditions he has developed, McCann-McCalpine claims he has been deemed disabled and unable to work as a driver of an eighteen-wheeler. (Id.).

In McCann-McCalpine's view, PrimeCare has adopted a custom and policy of overlooking the basic human needs of inmates at BCDC. (Id. ¶ 29). He states that PrimeCare had notice that their training and policy enforced by staff were inadequate and resulted in constitutional violations based on multiple previous incidents. (Id.). He alleges that they deliberately ignored inmates' basic needs for adequate healthcare. (Id.). He further alleges that PrimeCare overloads their employees with a workload demand they are not capable of meeting. (Id. ¶ 30). He seeks monetary damages as relief. (Id. ¶¶ 37–38).

3

McCann-McCalpine filed a Complaint on July 9, 2025. (ECF No. 1). His three-count Complaint alleges Defendants violated his Eighth Amendment rights under three theories of liability. (Compl. ¶¶ 33–35). PrimeCare filed a Motion to Dismiss on February 8, 2025. (ECF No. 20). McCann-McCalpine filed an affidavit in opposition to the Motion on May 19, 2025, signed by a licensed practical nurse who concluded that the medical staff at BCDC neglected McCann-McCalpine. (ECF No. 24). To date, PrimeCare has not filed a reply. [2]

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999) (quoting <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), or does not "state a claim to relief that

---

[2] McCann-McCalpine also filed a Motion for Entry of Default (ECF No. 14), which PrimeCare opposes. (Opp'n Request Order Default ["Opp'n"], ECF No. 16). The summonses were returned executed on November 14, 2024, (ECF No. 13), and McCann-McCalpine filed his Motion on December 3, 2024. (ECF No. 14). PrimeCare assumed that Standing Order 2012-01 would apply in this case, giving it sixty days to respond to the Complaint. (Opp'n at 2). McCann-McCalpine, however, was not incarcerated when he initiated this action. (Compl. ¶ 3). In any event, PrimeCare filed a Motion for Extension of Time on December 4, 2024. (ECF No. 17). "Entry of default judgment is not favored and is reserved for cases where the adversary process has been halted by an unresponsive party." <u>Kelly v. Hill</u>, No. ELH-20-2531, 2021 WL 3055615, at *18 (D.Md. July 19, 2021); Fed.R.Civ.P. 55(a). There has been no interruption in the adversary process. Accordingly, the Court will deny McCann-McCalpine's Motion for Entry of Default.

is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678. Lastly, it is well-settled law that complaint allegations must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Pleadings drafted by self-represented individuals are liberally construed and held to a less stringent standard than

pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**B.    Analysis**

**1.    Section 1983 Claims**

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, deprives them "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. See, e.g., Filarsky v. Delia, 566 U.S. 377, 383 (2012); Owens v. Balt. City State's Atty's Off., 767 F.3d 379, 402 (4th Cir. 2014). In Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), the Supreme Court held that local governmental entities may be liable under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights. Id. at 690–91. The Monell Court explained that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983." Id. at 694.

Of import here, Monell liability extends to private entities operating under color of state law, including private prison health care providers. See, e.g., West v. Atkins, 487 U.S. 42, 56 (1988) (explaining that when a state delegates its "affirmative obligation to provide adequate medical care to" inmates to a private corporation, that corporation acts under color of state law while providing those services); Polk Cnty. v. Dodson, 454 U.S. 312, 320 (1981) ("Institutional physicians assume an obligation to the mission that the State, through

6

the institution, attempts to achieve."); Rodriguez v. Smithfield Packing Co., 338 F.3d 348, 355 (4th Cir. 2003) (observing that principles of § 1983 municipal liability "apply equally to a private corporation" acting under color of state law (citations omitted)). PrimeCare does not dispute that they and their medical staff operate under the color of state law while providing medical care to inmates at BCDC. (See generally Def.'s Mem. L. Supp. Mot. Dismiss ["Mot."], ECF No. 20-1). Thus, those standards applicable to municipalities apply with full force to PrimeCare.

A viable § 1983 Monell claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. See, e.g., Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403–04 (1997); Kirby v. City of Elizabeth City, 388 F.3d 440, 451 (4th Cir. 2004). There are four kinds of customs, policies, or practices that a plaintiff can allege: (1) "the decisions of a government's lawmakers"; (2) "the acts of its policymaking officials"; (3) "practices so persistent and widespread as to practically have the force of law"; and (4) "[a] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights," known as a "failure to train" claim. Connick v. Thompson, 563 U.S. 51, 61 (2011). As to the "failure to train" claim, a plaintiff must show "[a] pattern of similar constitutional violations by untrained employees," id. at 62, or that a single constitutional violation "was the 'patently obvious' or 'highly predictable' consequence of the municipality's failure to provide additional specific training." Artiga Carrero v. Farrelly, 270 F.Supp.3d 851, 865 (D.Md. 2017) (quoting Connick, 563 U.S. at 64).

Here, McCann-McCalpine alleges that PrimeCare developed a practice of denying adequate care to BCDC inmates and failed to train and supervise its medical staff, causing him "pain, suffering, physical injury, and emotional distress." (Compl. ¶¶ 28–33). PrimeCare asserts that McCann-McCalpine's statements that PrimeCare "built a custom policy where they only bring [his medication] two times a day," "adopted [a] custom policy of overlooking inmates' basic human needs," and "failed to implement any new policies or practices to identify or discipline medical staff" are insufficient to demonstrate an official policy or custom which caused a violation of McCann-McCalpine's constitutional rights. (Mot. at 5–6; Compl. ¶¶ 24, 29, 30).[3] PrimeCare contends, therefore, that the Complaint should be dismissed for failure to state a claim upon which relief may be granted. (Mot. at 1).

The Court concludes that McCann-McCalpine's statements are conclusory and do not adequately allege that there was a policy of denying mental health medications to detainees at BCDC or failing to train medical staff to do so. His allegation that medical staff failed to provide him his afternoon medications on multiple occasions from October 2022 to February 2023 does not demonstrate the existence of a practice that is "so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61. His overarching assertion that PrimeCare failed to train its medical staff, without more, also does not adequately allege that PrimeCare violated his constitutional rights, let alone engaged in a pattern of such violations, or that any alleged violation was the result of

---

[3] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

PrimeCare's failure to train its medical staff. See Artiga, 270 F.Supp.3d at 865 (citations omitted); see also Valentine v. PrimeCare Med., Inc., 697 F.Supp.3d 431, 441 (D.Md. 2023) (To state a sufficient "failure to train" claim, "[a] plaintiff must do more than offer 'bald assertions that [medical staff] were not properly trained.'" (quoting Grim v. Balt. Police Dep't, No. ELH-18-3864, 2019 WL 5865561, at *18 (D.Md. Nov. 8, 2019))). The Court, therefore, will dismiss McCann-McCalpine's § 1983 claims against PrimeCare.

### 2.    Fourteenth Amendment Claims[4]

The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees to receive adequate medical care. Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) ("[T]he Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, 'mandates the provision of medical care to [pretrial] detainees who require it.'" (quoting Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992))). In Kingsley v. Hendrickson, 576 U.S. 389 (2015), the Court held that, unlike the standard applied to post-conviction detainees' excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment includes no subjective component. Id. at 395–97. Several circuits have extended this reasoning to hold

---

[4] To the extent that McCann-McCalpine's Complaint can be read to raise a state medical malpractice claim, Section 3-2A-02(a)(1) of the Courts and Judicial Proceedings Article of the Maryland Code requires a plaintiff to present such a claim to the Maryland Health Care Alternative Dispute Resolution Office before they may file a complaint in court if, like McCann-McCalpine, they are seeking more than $30,000 in damages. (Compl. ¶¶ 37–38); see Davis v. Frostburg Facility Operations, LLC, 177 A.3d 709, 715 (Md. 2018). Nothing in the pleadings demonstrates that McCann-McCalpine has complied with this prerequisite. Therefore, to the extent it is raised, the Court will dismiss the medical malpractice claim without prejudice.

that the standard for pretrial detainees' claims of deliberate indifference and inadequate medical care under the Fourteenth Amendment should likewise not include a subjective component. See, e.g., Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017); Miranda v. Cnty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018); Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018).

In Short v. Hartman, 87 F.4th 593 (4th Cir. 2023), cert. denied sub nom, Hartman v. Short, 144 S.Ct. 2631 (2024), the Fourth Circuit held that the Kingsley objective standard for Fourteenth Amendment claims "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" Id. at 608–09 (quoting Kingsley, 576 U.S. at 98). The court in Short adopted a four-part test for pretrial detainees' Fourteenth Amendment claims of "deliberate indifference to a medical need":

> To state a claim for deliberate indifference to a medical need . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Id. at 611. A pretrial detainee plaintiff does not have to "show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. (quoting Farmer v.

Brennan, 511 U.S. 825, 836 (1994)). The plaintiff, however, must do more than "allege that the defendant negligently or accidentally failed to do right by the detainee." Id. at 611–12.

Generally, claims alleging deliberate indifference to a medical need "address the denial of medical care to a prisoner rather than the provision of substandard care; no care, rather than bad care." Gardner v. United States, 184 F.Supp.3d 175, 181 (D.Md. 2016) (citation modified). A claim based on substandard care "may be cognizable—but only in unusual circumstances, such as where the treatment provided is 'so cursory as to amount to no treatment at all.'" Id. (quoting King v. United States, 536 F.App'x 358, 360 (4th Cir. 2013)); see Albero v. Worcester Cnty. Bd. of Comm'rs, No. JKB-24-1100, 2025 WL 462588, at *15 (D.Md. Feb. 11, 2025) (concluding that plaintiff failed to state a cognizable deliberate-indifference claim because the complaint did not support the inference that the care defendants provided was "tantamount to nothing").

Here, McCann-McCalpine alleges that Jane Doe Nurses 1–5 either denied or delayed the administration of his afternoon psychiatric medications several times between October 2022 and February 2023. (Compl. ¶¶ 23–24; Compl. Ex.1 at 1–4, ECF No. 1-1). He argues that the nurses' alleged failures to provide his afternoon medications, either timely or at all, demonstrates their deliberate indifference to his medical needs. (Compl. ¶¶ 17–18). McCann-McCalpine's assertions that he was "vulnerab[le] to suicide," (id. ¶ 23), that he had high blood pressure one morning in October, (id. ¶ 27), and that he injured his hands due to not receiving the care he requested, (id.), however, do not demonstrate a "substantial risk of serious harm," nor do they support the inference that delaying or denying his afternoon medications "posed an unjustifiably high risk of harm." See Albero,

2025 WL 462588, at *14 (concluding that an allegation of "an increased risk of suicide" does not "support a plausible inference of a 'substantial risk of serious harm'"). Furthermore, the Complaint and the attached exhibit reporting the dates on which, according to McCann-McCalpine, he did not receive his afternoon medication do not support the inference that the allegedly substandard care he received was equivalent effectively to no care at all. Indeed, McCann-McCalpine states in the Complaint that the nurses provided him his medication at least twice per day nearly every day during that five-month period. (Id. ¶¶ 24–25; Compl. Ex.1 at 1–4). The Court, therefore, will dismiss McCann-McCalpine's Fourteenth Amendment claims against Jane Doe Nurses 1–5.

### III.    CONCLUSION

For the foregoing reasons, the Court will DENY McCann-McCalpine's Motion for Default Judgment (ECF No. 14) and GRANT PrimeCare's Motion to Dismiss. (ECF No. 20). Additionally, the Complaint is DISMISSED with prejudice as to PrimeCare and the Jane Doe Nurses 1–5 for failure to state a claim against them and is DISMISSED without prejudice as to any medical malpractice claim raised. A separate Order follows.

Entered this 26th day of August, 2025.

                            _____
                                /s/
                            George L. Russell, III
                            Chief United States District Judge